# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | |
|---|---|
| MARY KAY INC., §<br>§<br>Plaintiff, §<br>v. §<br>§<br>ALEJANDRO BARRIENTES, a natural §<br>person, and JOHN DOES 1-10, §<br>§<br>Defendants. §<br>_____ § | C.A. NO.:<br><br>DEMAND FOR JURY TRIAL |

## COMPLAINT FOR DAMAGES, INJUNCTIVE, AND OTHER RELIEF FOR VIOLATION OF 15 U.S.C. § 1114, 15 U.S.C. § 1125(a), 15 U.S.C. 1125(c), AND RELATED CLAIMS

Plaintiff, Mary Kay Inc. ("Mary Kay"), brings this action against defendants, Alejandro Barrientes ("Barrientes") and John Does 1-10 (collectively, "Defendants"), for (1) trademark infringement in violation of the Lanham Act, 15 U.S.C. § 1114; (2) false advertising in violation of 15 U.S.C. § 1125(a)(1)(b); (3) unfair competition in violation of 15 U.S.C. § 1125(a); (4) trademark dilution in violation of 15 U.S.C. § 1125(c); (5) trademark dilution in violation of Tex. Bus. & Com. Code § 16.103; (6) trademark infringement and unfair competition under Texas common law; and (7) tortious interference with existing contracts.  Mary Kay also brings a claim against Barrientes for breach of the contract he entered into with Mary Kay (Count 8). Mary Kay's claims arise out of Defendants' misappropriation of Mary Kay's trademarks in connection with their unlawful and unauthorized sale on the Internet of materially different products bearing Mary Kay's trademarks to unwitting customers, as well as Barrientes' breach of his contract with Mary Kay.   In support of its complaint, Mary Kay alleges as follows:

1

## PARTIES

1.      Mary Kay is a corporation organized under the laws of Delaware with its principal place of business at 16251 Dallas Parkway, Addison, Texas 75001.

2.      Barrientes is a natural person who, upon information and belief, resides at 1197 Squaw Valley Drive, Unit A, Brownsville, Texas, 78520 and may be served with process there or anywhere else he may be found.  Upon information and belief, Barrientes operates an online storefront on www.amazon.com ("Amazon") that is currently called "GloriousBeauty" and has previously been called "FabulousbeautyLlc," "TH3B3STD3ALZ," and "Barrientes ecommerce" (the "Amazon Storefront').  The Amazon Storefront can be accessed at https://www.amazon.com/sp?seller=A4N3C898F3R22.

3.      Mary Kay believes that other individuals or entities may also be responsible for the events and occurrences referred to herein or be otherwise interested in the outcome of the dispute. The true names, involvement, and capacities, whether individual, corporate, associated, or otherwise of these individuals or entities are unknown to Mary Kay.  Therefore, Mary Kay sues these defendants by the fictitious names John Does 1 through 10.  When the true names, involvement, and capacities of these parties are ascertained, Mary Kay will seek leave to amend this Complaint accordingly.  If Mary Kay does not identify any such parties, it will dismiss these defendants from this action.

## JURISDICTION

4.      This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1338, and 28 U.S.C. § 1367.   Mary Kay's federal claims are predicated on 15 U.S.C. § 1114 and 15 U.S.C. § 1125(a) and (c), and its claims arising under the laws of the

2

State of Texas are substantially related such that they form part of the same case or controversy under Article III of the United States Constitution.

5.     This Court has personal jurisdiction over Defendants because they have expressly aimed tortious activities toward the State of Texas and established sufficient minimum contacts with Texas by, among other things, advertising and selling infringing products bearing Mary Kay's trademarks to consumers within Texas through a highly interactive commercial website, through the regular course of business, with the knowledge that Mary Kay is located in Texas and is harmed in Texas as a result of Defendants' sales of infringing products to Texas residents. Defendants know that Mary Kay is located in Texas, among other reasons, because Barrientes used to be a Mary Kay Independent Beauty Consultant.  Mary Kay's claims arise out of Defendants' sales of infringing products bearing Mary Kay's trademarks to Texas residents through the regular course of business.

6.     This Court also has personal jurisdiction over Barrientes because the contract he entered into with Mary Kay to become a Mary Kay Independent Beauty Consultant includes a forum-selection clause in which the parties agreed that this Court has jurisdiction over any dispute relating to the contract.

7.     This Court also has personal jurisdiction over Barrientes because he is domiciled in Texas and transacts business within Texas.  Barrientes stores his inventory within Texas and ships infringing products from Texas when consumers purchase products from Defendants over the Internet.

## **VENUE**

8.     Venue is properly founded in this judicial district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to Mary Kay's claims occurred within this

judicial district or, in the alternative, because a Defendant is subject to personal jurisdiction in this district.

## FACTUAL ALLEGATIONS
### Mary Kay and Its Trademarks

9.     Mary Kay is a global manufacturer and wholesale distributor of cosmetics, skin care products, toiletries, and other related products.  Mary Kay's products are sold in over thirty-five countries, including the United States, and the Mary Kay brand is recognized for its quality worldwide.

10.     Mary Kay uses a direct-sales business model designed to ensure that consumers only receive products that meet the company's high quality standards.  Mary Kay products are available to the public exclusively through Mary Kay Independent Beauty Consultants (hereafter, "Consultants"), who must enter into contracts with Mary Kay to be able to sell Mary Kay products.

11.     Mary Kay devotes a significant amount of time, energy, and resources to protecting the value of its brand, products, name, and reputation.  Through its contracts with Consultants, Mary Kay requires Consultants to provide customer services and follow various quality controls including requirements relating to product storage, handling, inspection, sales channel restrictions, and providing consultation and guidance on the safe and proper use of Mary Kay products (collectively, the "Consultant Obligations").  By selling its products exclusively through Consultants, Mary Kay is therefore able to ensure the satisfaction of consumers and maintain the integrity and reputation of the Mary Kay brand.  In the highly competitive cosmetics products market, product quality and customer service are a fundamental part of a consumer's decision to purchase a product.

12.     Mary Kay first began using the MARY KAY® trademark in 1963.  Since that time, Mary Kay has continuously used the MARY KAY® mark in commerce in connection with the sale of cosmetics products and other types of products.

13.     To promote and protect its intellectual property rights, Mary Kay has registered numerous trademarks with the United States Patent and Trademark Office.  These trademarks include, but are not limited to: MARY KAY® (U.S. Trademark Registration Nos. 0817516, 1070841, 1545983, 1842599, 2542184, 2559020, 3470956) and MK® (U.S. Trademark Registration Nos. 2559020, 3909669, 4509594, 4509597) (collectively, the "Mary Kay Trademarks").

14.     The registration for each of the Mary Kay Trademarks is valid, subsisting, and in full force and effect.  Pursuant to 15 U.S.C. § 1065, the Mary Kay Trademarks serve as conclusive evidence of Mary Kay's ownership of the marks and of its exclusive rights to use the marks in commerce and in connection with the sale and distribution of Mary Kay's products identified in the registrations.  *See* 15 U.S.C. § 1115(b).

15.     Mary Kay actively uses and markets the Mary Kay Trademarks in commerce.

16.     Due to the quality and exclusive distribution of Mary Kay's products, and because Mary Kay is recognized as the source of high quality products, the Mary Kay Trademarks have substantial value.

### Online Marketplaces and the Threat They Pose to Mary Kay's Quality Controls, Reputation, and Goodwill

17.     E-commerce retail sales have exploded over the past decade.  From 2007 to the beginning of 2018, the percentage of total retail sales in the United States that were completed through e-commerce channels rose from 3.2% to 9.4%.  *See* E-Commerce Retail Sales as a

Percent of Total Sales, FEDERAL RESERVE BANK OF ST. LOUIS, March 13, 2019, https://fred.stlouisfed.org/series/ECOMPCTSA.

18.    In 2018, consumers spent $517.36 billion on e-commerce sales, a 15% increase from 2017.  The massive growth in e-commerce is being driven largely by sales on online marketplaces.  For example, in 2018, United States consumers spent $206.82 billion in e-commerce sales on Amazon, a 16% increase from 2017.  *See* Fareeha Ali, U.S. ecommerce sales grow 15.0% in 2018, DIGITAL COMMERCE 360 (March 13, 2019), https://www.digitalcommerce360.com/article/us-ecommerce-sales/.

19.    Although online marketplaces are becoming increasingly popular among consumers, they also greatly challenge a manufacturer's ability to control the quality and safety of its products.

20.    Online marketplaces allow third parties to sell products anonymously (i.e., without disclosing their actual identity or sources to consumers).  As a result, any person who is able to obtain a manufacturer's products through unauthorized diversion can sell the products on the online marketplaces without having to reveal his or her identity to the consuming public. This effectively prevents manufacturers and consumers alike from being able to reach online marketplace sellers and address quality concerns.

21.    Consumers who purchase products through online marketplaces cannot touch, inspect, or interact with products before purchasing them.  Instead, consumers must trust that the product they select over the Internet will arrive and be of the quality they expect and typically receive from the manufacturer.

22.    It is unfortunately common for unauthorized sellers to sell diverted products on online marketplaces that are of lesser quality than products sold through manufacturers'

6

authorized channels.  Unauthorized sellers also frequently mix in fake products when shipping products to unwitting consumers.  Scott Cohn, Greed Report: Your quest for savings could land you in the "gray market," CNBC, Sept. 8, 2016, https://www.cnbc.com/2016/09/08/greed-report-your-quest-for-savings-could-land-you-in-the-gray-market.html.  Indeed, there is an "epidemic" of counterfeit products being sold on the online marketplaces that diverters are exploiting because they know consumers trust online marketplaces and think that the products they are buying through the marketplaces are genuine.  Spencer Soper, Amazon Gets Real About Fakes, BLOOMBERG, Nov. 28, 2016, https://www.bloomberg.com/news/articles/2016-11-28/amazon-gets-real-about-fakes.

23.     In its 2018 annual report to its shareholders, in fact, Amazon admitted that third-party sellers on its marketplace may be selling products that are "counterfeit," "pirated," "stolen," or otherwise "materially different" from the product that was described to consumers. Amazon.com, Inc., Annual Report (Form 10-K), at 14 (Jan. 31, 2019), available at https://www.sec.gov/Archives/edgar/data/1018724/000101872419000004/amzn-20181231x10k.htm.  Amazon acknowledged that these actions are "violating the proprietary rights of others."

24.     Because unauthorized sellers on online marketplaces operate anonymously, a manufacturer has no ability to exercise its quality controls over the products they sell or to ensure that the products are safe and authentic.  A manufacturer's inability to exercise control over the quality of its products presents serious risks to the health and safety of consumers—particularly when, as here, some of a manufacturer's products are applied to consumers' bodies.

25.     These dangers of online marketplaces also threaten a manufacturer's ability to maintain its goodwill, reputation, and brand integrity.

26.     When purchasing products on an online marketplace, customers are not informed whether a seller of a product is authorized by the manufacturer.  Additionally, the interface design of many online marketplaces causes consumers to believe falsely that they are always purchasing from the manufacturer when they purchase an online marketplace or, at minimum, from an authorized seller that is selling under the manufacturer's oversight and with the manufacturer's approval.  Consumers who purchase on Amazon are particularly likely to experience this confusion because, on Amazon, all sellers of a product are listed under a single product listing that states, "By [name of brand]", immediately under the title of the product even though many products are sold on Amazon by unauthorized sellers that have no relationship with the manufacturer or brand owner.

27.     For all of these reasons, a vast number of consumers purchase products on online marketplaces without recognizing that they purchased from an unauthorized seller that does not (and cannot) follow the manufacturer's quality controls.

28.     When a customer purchases from a marketplace and receives a product that is damaged, defective, expired, soon-to-expire, counterfeit, or of otherwise poor quality, the customer is much more likely to associate that frustration with the brand/manufacturer than the anonymous seller.

29.     Online marketplaces give disgruntled consumers a powerful and convenient forum to air their grievances: product reviews.  Any consumer who is dissatisfied with a product he or she receives can post a review on the marketplace for all other consumers to see.  Most often, these reviews, which are often permanently fixed, will criticize the brand/manufacturer rather than the seller.

30.     Product reviews have a significant impact on a brand's reputation.  Survey results show that 82% of United States adults "sometimes" consult online reviews when buying a new product online and 40% "always" or "almost always" consult such reviews.  Aaron Smith & Monica Anderson, Online reviews, PEW RESEARCH CENTER, Dec. 19, 2016, http://www.pewinternet.org/2016/12/19/online-reviews/.

31.     Studies and surveys consistently show that consumers place extraordinary trust in online product reviews.  For instance, one survey found that consumers are more than 10 times more likely to rely on consumer-generated product reviews than product descriptions written by brand owners.   Moms Place Trust in Other Consumers, EMARKETER, Feb. 10, 2010, https://www.emarketer.com/Article/Moms-Place-Trust-Other-Consumers/1007509.        Because consumers so heavily "rely on reviews when they're shopping online," the Federal Trade Commission has begun suing companies who post fake reviews of their products on online marketplaces.  Megan Henney, FTC cracking down on fake Amazon reviews, FOX BUSINESS, Feb. 28, 2019,  https://www.foxbusiness.com/technology/ftc-cracking-down-on-fake-amazon-reviews (quoting a press release from the director of the FTC).

32.     Because of the reliance consumers place on online reviews, negative online reviews can be the death knell for a brand owner's reputation and goodwill.

**Mary Kay's Reputation and Goodwill Have Been and Are Being Harmed By Numerous Online Marketplace Consumer Reviews of Poor Quality Products Purchased from Unauthorized Sellers**

33.     Consumers who purchase from anonymous, unauthorized sellers on online marketplaces frequently receive poor-quality products and leave negative reviews on product listings.  These negative reviews injure consumer perceptions of a brand's quality and reputation, ultimately causing the brand to suffer damage to its goodwill and lost sales.

9

34.      Numerous consumers have written negative reviews of Mary Kay products being offered for sale on online marketplaces by unauthorized sellers.  In these reviews, consumers have given these Mary Kay products low "ratings" and complained of receiving products that were expired, damaged, tampered with, counterfeit, or otherwise different from what was advertised.

35.      For example, on January 28, 2020, Amazon user "siggy" complained that the product was dry and lacked "enough moisture":



36.      On November 30, 2019, Amazon user "mel" complained that poor product quality will make her abandon the Mary Kay brand:



37.      On November 7, 2019, Amazon user "sara smith" complained that she purchased a Mary Kay product on Amazon that had "expired 6 years ago!!!"



10

38.    On October 18, 2019, Amazon user "Monica Bradford" complained that she purchased a Mary Kay product on Amazon that was "damaged" and "had already been used."



39.    On September 9, 2019, Amazon user "Silvia Galvan" complained that she purchased a Mary Kay product on Amazon that was "garbage," "horrible," and had "probably been used!!!"



40.    On August 17, 2019, Amazon user "Singh" complained that he purchased a Mary Kay product on Amazon that was open, did not have a seal, and appeared to be previously used.



41.    On July 27, 2019, Amazon user "MRBUBBLES" complained that he purchased a Mary Kay product on Amazon that was "fake," not sealed, and caused his eyes to burn.



42.     On May 30, 2019, an Amazon Customer complained that she received a Mary Kay product through Amazon that did not have a box, had its expiration date "taken off," and had a "yellow color" rather than "white cream."



43.     On May 25, 2019, Amazon user "Susan Ballard Harmon" complained that she received a Mary Kay product through Amazon that was "not in a Mary Kay packaging box" and "had a yellowing old look to it."



44.     On May 24, 2019, a Kindle Customer complained that she purchased Mary Kay lotion on Amazon that "has a severe smoke smell."   She suspected that she had received "damaged products they are trying to re-sell."



12

45.     On April 26, 2019, Amazon user "Lauren Cassimatis" reported that, after purchasing what purported to be a Mary Kay product on Amazon, she received a "fraud product."  She explained that there "was no seal on the product and it was clearly NOT Mary Kay's eye makeup remover.  It is very oily and not the same."



46.     On March 21, 2019, Amazon user "Beautiful" complained that she received a Mary Kay product on Amazon that was defective.  She reported, "I have bought this product before and it worked good but this last time I got it only made my skin dry red and burn.  I know there is something wrong with this product."



47.     On March 19, 2019, an Amazon Customer complained that a Mary Kay product she purchased on Amazon felt like "it's been watered down" and "does not remove makeup like it should."  She explained that she had not experienced these issues when buying products from her friend who is a Consultant.



48.     On January 11, 2019, Amazon user "The W Collection" reported that, after purchasing what purported to be a Mary Kay product on Amazon, she received a product that "is NOT MK!!!"   She explained that the product "smells terrible," "immediately made my skin irritated," and had different print from a genuine Mary Kay product she compared it to.



49.     On December 15, 2018, Amazon user "Forest Billington" complained that he would not be "a Mary Kay customer any longer" because a Mary Kay product he received through Amazon caused him to believe that Mary Kay had changed the formula of the product.



50.     On November 5, 2018, an Amazon Customer complained that she purchased a Mary Kay product on Amazon that was eight years old and "broke my face out."   She admonished sellers to "[c]heck the dates on the product before you send it out."



51.     On October 7, 2018, Amazon user "Jayla" reported that, after purchasing what purported to be a Mary Kay product on Amazon, she received a product that was "fake."   She

complained that the product "[s]mells like some $1 drug store cream plus it's all sticky on my face."



52.    On September 29, 2018, Amazon user "Nadia" complained that she received a Mary Kay product through Amazon that had a "thank you" sticker covering up the product's expiration date.  When she removed the sticker, she discovered that the product had expired almost one year before she purchased it.



53.    On September 13, 2018, Amazon user "rhonda" reported that she had thrown away a Mary Kay product she purchased on Amazon and "won't buy again" because the product "smelled old."



54.     On August 30, 2018, Amazon users "Rebecca and Faical Khalfouni" reported that they were very angry because they purchased a Mary Kay product on Amazon that had been expired for over a year.



Rebecca & Faical Khalfouni

★☆☆☆☆  **Expired product**
August 30, 2018
**Verified Purchase**
The product was expired for over a year. I am so angry that this would be sent to me in such a manner.
16 people found this helpful

55.     On September 2, 2016, an Amazon Customer complained that he received a Mary Kay product through Amazon that was 9 years old.



Amazon Customer

★☆☆☆☆  **like 9 years old**
September 2, 2016
Color: Original version   |   **Verified Purchase**
was old . like 9 years old
5 people found this helpful

56.     On November 11, 2015, Amazon user "Emmasmom" complained that she received a Mary Kay product through Amazon that was "not the same as you would buy from a consultant."  She explained that the product "didn't even have the same consistency as my original bottle" and was either "tampered with and filled with water or it was very old."



Emmasmom
★☆☆☆☆  **Not the original formula!**
November 11, 2015
Color: Clear liquid   |   **Verified Purchase**
This was not the same as you would buy from a consultant. Either it was tampered with and filled with water or it was very old. It didn't even have the same consistency as my original bottle. Otherwise, MK has declined in quality quite a bit!

57.    On May 1, 2015, Amazon user "LWT" complained that she purchased a Mary Kay product on Amazon that was "like paste."  She added, "I've used this exact product in the past (purchased from MK consultant) and this was not the same consistency."



58.    On February 22, 2015, Amazon user "Thi Nguyen" complained that after purchasing what purported to be a Mary Kay product on Amazon, she received a product that was "fake," "not authentic," and "mixed with another substance."  She explained that she had used authentic Mary Kay products in the past, and in the product she received "[y]ou can see clearly in the middle where there's a separation of different liquids."



59.    On January 30, 2015, Amazon user "Eduardo Antunes Bartoluzzi" complained that Mary Kay products he purchased on Amazon "did not appear new," and arrived in packaging that "looks very old" and "came all dented and scratched."  He asked, "what happened?"



60.     On October 6, 2014, Amazon user "Tony D" complained that he received a Mary Kay product through Amazon that was missing half of its content and "[s]eemed old."



61.     On April 26, 2014, Amazon user "Liza Richard" complained that she received a Mary Kay product through Amazon that was in torn up boxes and had been opened, which caused lotion to "[spill] out the top" and be "on the side of the bottle."  She stated that it was "ridiculous that someone would sell this!"



62.     On January 29, 2014, Amazon user "remnant" complained that a Mary Kay product she purchased on Amazon "smelled like crap when I first opened it and it still does." She also complained that the product had been expired for two years, which the seller had not disclosed in the product listing.

18



63.    On February 19, 2013, Amazon user "Bonnie" complained that she received a Mary Kay product through Amazon that had been previously opened and used before it was shipped to her.



64.    On October 23, 2012, Amazon user "Ana" complained that she received a Mary Kay product through Amazon that had been expired for more than four years.  She described the experience as a "disgrace."



65.    The foregoing reviews are only a small sample of negative reviews arising from the unauthorized sale of Mary Kay products that appear on the Amazon website.

66.    Amazon does not allow product reviews to identify the seller who sold the product that is the subject of the product review.  Given that Defendants are selling a high volume of products bearing the Mary Kay Trademarks on Amazon, none of which are subject to

Mary Kay's quality controls, upon information and belief, at least some of the foregoing negative reviews—and the many similar reviews of Mary Kay products that appear on the Amazon website—were written by customers who purchased products bearing the Mary Kay Trademarks from Defendants.

**Mary Kay Prohibits Sales on Online Marketplaces, Exercises Strict Quality Controls, and Provides a Satisfaction Guarantee for Products Purchased from Consultants**

67.    Mary Kay maintains quality control over its products by allowing Mary Kay products to be sold to end-user consumers only by Consultants.  Mary Kay enforces the quality controls that Consultants are required to follow pursuant to their contracts with Mary Kay.

68.    Mary Kay strictly prohibits its products from being sold on online marketplaces, including Amazon, in part because of the goodwill and consumer safety issues discussed above. When Mary Kay products are sold on online marketplaces, unwitting consumers purchase poor quality products from anonymous sellers who customers cannot identify, preventing Mary Kay from being able to take corrective action to stop the sale of poor quality products that tarnish its reputation.

69.    Mary Kay also prohibits Consultants from selling products through certain other channels, including retail or service establishments and websites.  Mary Kay prohibits sales through these channels to encourage Consultants to display and sell products in interpersonal transactions where Consultants provide customers with vital information regarding Mary Kay products and their uses.  Through person-to-person interactions, Consultants are also able to provide explanation and guidance on how to safely and properly use Mary Kay products.

70.    Mary Kay's contracts with its Consultants expressly provide that the prohibition on selling Mary Kay products on online marketplaces and other retail websites survives the termination of the contracts.

71.    Through its contracts, Mary Kay also requires Consultants to follow quality controls relating to the handling, storage, and sale of Mary Kay products.  These quality controls allow Mary Kay to maintain the integrity and quality of its products, guarantee that consumers receive undamaged, genuine goods, and ensure that consumers receive products that meet their specific needs.

72.    As an example, Mary Kay instructs Consultants to rotate their inventory of Mary Kay products and check the manufacture date to determine whether products are expired or soon-to-be expired.  To ensure that consumers receive the freshest possible product, Mary Kay imprints each of its products with a coding system that indicates the date when the product was manufactured.  Most Mary Kay products are produced to have a shelf life of three years from the date of manufacture, which is the standard for the cosmetic industry.  For products with a shelf life of less than three years, the expiration date is clearly indicated on the product packaging.

73.    To ensure that customers receive products of the quality they have come to expect from Mary Kay, Consultants are also prohibited from altering any Mary Kay product, packaging, label, or accompanying literature.  Consultants may sell Mary Kay products only in their original packaging and formulation to prevent customer confusion and erosion in the quality and value of Mary Kay products.

74.    The Consultant Obligations also require Consultants to provide personal services to customers concurrently with and after their sales of Mary Kay products, including providing advice, answering questions, and teaching customers how to use products.  Consultants have access to literature and other educational materials developed to advise customers on each product's purpose, features, and benefits.  Consultants are thus uniquely qualified to explain best practices for safe and optimal use of Mary Kay products, and Consultants are required to provide

their contact information so that customers can contact Consultants with any questions about products or completed product purchases. Consultants are also trained and instructed to present only truthful and accurate information about Mary Kay's products and services.

75.     Mary Kay also prohibits Consultants from selling Mary Kay products to persons or entities who resell the products. Consultants are permitted to sell products only to end-user consumers and only in quantities that are generally purchased by consumers for personal use. The purpose of these restrictions is to ensure that Mary Kay products are sold to consumers only by Consultants who follow Mary Kay's quality controls and over whom Mary Kay can exercise quality control.

76.     Mary Kay provides a complete money-back satisfaction guarantee (the "Satisfaction Guarantee") to consumers who purchase Mary Kay products from Consultants. Under the Satisfaction Guarantee, a consumer can receive a product replacement, product exchange, or full refund if a consumer is not completely satisfied with any Mary Kay product that the consumer purchased from a Consultant. To receive benefits under the Satisfaction Guarantee, consumers must return the product at issue to the Consultant from whom the product was purchased. If the Consultant is no longer active, consumers must return their product to Mary Kay along with proof of purchase.

77.     Mary Kay offers the Satisfaction Guarantee only for products that were sold by sellers who are subject to Mary Kay's quality controls and have agreed to follow its quality controls. Because non-Consultants are not subject to Mary Kay's quality controls and Mary Kay therefore cannot ensure the quality of products sold by non-Consultants, the Satisfaction Guarantee is not available for Mary Kay products purchased from any seller that is not a Consultant.

**Defendants' Sales on the Internet of Products Bearing the Mary Kay Trademarks**

78.     Because the unauthorized sale of Mary Kay products over the Internet threatens the safety of consumers and the reputation and goodwill associated with the Mary Kay Trademarks, Mary Kay actively monitors the sale of Mary Kay products online.

79.     Through these efforts, Mary Kay discovered that a high volume of products were being sold on Amazon through a storefront called "Barrientes ecommerce."

80.     Mary Kay conducted an investigation to determine the identities of the individual(s) or entity(ies) that operate the "Barrientes ecommerce" storefront.  Through its investigation, Mary Kay determined that Barrientes is responsible, at least in part, for the operation of the "Barrientes ecommerce" storefront.  Upon information and belief, additional individuals and/or entities may also assist in the operation of the "Barrientes ecommerce" storefront.

81.     On or about January 2, 2019, counsel for Mary Kay sent a cease and desist letter to Barrientes.  Mary Kay did not receive any response to its letter, and Mary Kay products were not removed from Defendants' Amazon Storefront.

82.     Through further investigation, Mary Kay also discovered that Barrientes used to be a Consultant.  On or around December 10, 2018, Barrientes entered into a contract with Mary Kay to become a Consultant ("Consultant Agreement").  By signing the contract, Barrientes agreed to follow all of the Consultant Obligations in exchange for the right to resell Mary Kay products to consumers and receive other benefits provided by the contract.

83.     In May 2019, Mary Kay terminated its contract with Barrientes after it discovered that he was reselling Mary Kay products on Amazon in breach of his contract.  Mary Kay informed Barrientes in writing that, even though his Consultant Agreement was terminated, he

23

was still bound by the contract's prohibition on selling Mary Kay products on online marketplaces and other retail websites because that obligation survives the termination of his contract. Barrientes has not been a Consultant since May 2019. Since that time, Barrientes has not been authorized to sell Mary Kay products and has not been subject to Mary Kay's quality controls.

84.     On January 13, 2020, counsel for Mary Kay sent another cease-and-desist letter to Barrientes via email and overnight delivery to his residence at 1197 Squaw Valley Drive, Unit A, Brownsville, TX, 78520. Mary Kay's letter demanded that Barrientes permanently cease selling products bearing the Mary Kay Trademarks. The letter also attached a draft complaint asserting Mary Kay's legal claims against Barrientes.

85.     Mary Kay has not received any response to its January 13, 2020, letter.

86.     In addition to ignoring Mary Kay's cease-and-desist letters, Defendants have also attempted to evade Mary Kay's detection by repeatedly changing the name of their Amazon Storefront. On January 4, 2019—*two days* after Mary Kay sent its first cease-and-desist letter to Barrientes—Defendants changed the name of their storefront from "Barrientes ecommerce" to "TH3B3STDALZ." On January 26, 2019, Defendants changed the name of their storefront again from "TH3B3STDALZ" to "GloriousBeauty." On March 26, 2019, Defendants changed the name of their storefront from "GloriousBeauty" to "FabulousbeautyLlc." And on July 9, 2019, Defendants changed the name of their storefront again from "FabulousbeeautyLlc" to "GloriousBeauty."

87.     The website SellerRatings.com, a third-party online marketplace database, confirms that the Amazon storefront called "GloriousBeauty" (at the time of filing) used to be

24

called "Barrientes ecommerce," among other names. *See* https://www.sellerratings.com/amazon/usa/gloriousbeauty:

GloriousBeauty is a Top Rated seller trusted by hundreds of Amazon.com customers in the US.

They have been selling on the Amazon.com marketplace since 2017. They sell in Beauty & Personal Care department from Mary Kay, m kay, Anker, Chom, Clear Proof by Mark Kay and other brands. They offer Prime shipping for the several dozen products they have in stock.

GloriousBeauty business name, phone number, address and email might be available by contacting GloriousBeauty. For customer service, returns, refunds and other issues contact Amazon.com.

For most recent reviews checkout GloriousBeauty profile on Amazon.com. Previously known as FabulousbeautyLlc, TH3B3STD3ALZ, Barrientes ecommerce, and have since changed the seller name.

88.    Thus, rather than ceasing their sales of products bearing the Mary Kay Trademarks following Mary Kay's correspondence, Defendants simply changed the name of their Amazon Storefront and continued selling products.

89.    Although Defendants can change the name of their Amazon Storefront at will, every storefront on Amazon is assigned a "Merchant ID number" that does not change over time even if the formal "name" of a storefront is changed.  The Merchant ID number for Defendants' Amazon Storefront is A4N3C898F3R22.  This same Merchant ID that has been assigned to the "FabolousbeautyLlc," "GloriousBeauty," "Barrientes ecommerce," and "TH3B3STD3ALZ'"'' storefronts.   Even if Defendants change the name of their Amazon Storefront again, their storefront can be accessed at the following link that includes the Merchant ID number for their storefront:

- https://www.amazon.com/sp?seller=A4N3C898F3R22.

90.    Based on these findings, Mary Kay has reasonably concluded that Barrientes operates the Amazon Storefront and is responsible for the conduct complained of herein.

91.    Defendants have sold a high volume of products through their Amazon Storefront. From August 2018 through the time of filing, Defendants have sold almost 18,000 products

bearing the Mary Kay Trademarks through their Amazon Storefront for total sales in excess of approximately $400,000.

92.    As of the time of filing, Defendants are continuing to sell products bearing the Mary Kay Trademarks through their Amazon Storefront.

**Defendants Are Selling Damaged, Defective, Used, and Poor Quality Products Through Their Amazon Storefront**

93.    Customer reviews of Defendants' Amazon Storefront show that Defendants have sold numerous products through Amazon that were previously used, tampered with, defective, damaged, different from what Defendants had advertised, improperly packaged, improperly labeled, missing items, or of otherwise poor quality.   Customer reviews also show that Defendants are providing poor customer service, including ignoring customer communications after customers paid for products they did not receive or received products that were different from what they had ordered.

94.    For example, on February 1, 2020, Amazon user "Lisa Braren" complained that, after she purchased a Mary Kay product from Defendants' Amazon Storefront, she received an empty box from Defendants.  She attributed this failure to Mary Kay: "My order of mary kay sheer mineral press powder was empty, all I received was [an] empty box! I would like the company to [send] me the item I ordered and paid for."

95.    On August 3, 2019, Amazon user "Christine Catalanotte" complained that, after she purchased a Mary Kay product from Defendants' Amazon Storefront, she received a product that was damaged, tampered with, and different from what she had ordered.  She wrote: "I ordered the Under Eye corrector, you gave me perfecting concealer in a box that is bent and opened on the top and bottom with a sticker on the box marked eye corrector . . . I'm very disappointed."

26

96.     On March 1, 2018, Amazon user "Judith" complained that Defendants sold her a product with damaged packaging and confusing price markups that made the product appear to be used.  "Judith" wrote: "Box was all beat up and torn with multiple pieces of scotch tape holding most of it together.  I don't know if this was a return and it isn't working or what in the heck is going on.  My charge was 40.00 but there was a sale price right on the box of 21.00.  This is [definitely not] what I want to give my niece for her birthday.  [It] will be going back.  Shame on you for sending garbage like this."

97.     On April 9, 2019, Amazon user "Cindi Delinksy" complained that, after she purchased a Mary Kay product from Defendants, she was sent a product that was different from what she had ordered and had a fraudulent bar code sticker.  She wrote: "I ordered the Mary TW Age Minimize 3D Day Cream with SPF 30 and I am so disappointed and upset that instead I received the version of this product that does not contain sunscreen.  I have an all day outdoor activity in a few days and I need the SPF version.  The bar code sticker says sunscreen, but it is on the sunscreen-free version."

98.     On January 21, 2019 Amazon user "Geraldine" complained that Defendants sent her different products from the ones she ordered: "I ordered 2 mary kay intense moisturizing cream and received 1 mary kay intense moisturizing cream and 1 mary kay oil free hydrating gel.  Very disappointing that I didn't [receive] what I ordered.  Did you run out? If so, don't replace it with something I didn't order."

99.     On March 25, 2019, Amazon user "Cg Daniels" complained that Defendants provided terrible customer service after they sent a product she had ordered to the wrong state.  "This seller has been contacted about charging me for this item and delivering to another state,"

the user wrote, "They have been awful in rectifying the situation. I [have] taken steps to report them and dismiss these charges."

100.     These types of complaints about Defendants are typical of the complaints made about the products sold and the customer service provided by anonymous, unauthorized sellers on online marketplaces.  A significant reason why Mary Kay allows its products to be sold only by Consultants that are subject to its quality controls and prohibits Consultants from selling products on online marketplaces is to prevent customers from suffering experiences like those described in the above complaints about Defendants.

**Defendants Are Infringing the Mary Kay Trademarks by Selling Products Bearing the Mary Kay Trademarks That Are Not Subject To, Do Not Abide By, and Interfere with Mary Kay's Quality Control and Customer Service Requirements**

101.     Defendants, without authorization from Mary Kay, have sold—and are currently selling—products bearing the Mary Kay Trademarks through their Amazon Storefront. Defendants may also be selling products through additional channels that Mary Kay has not yet discovered, and cannot discover until it is able to take discovery.

102.     The products sold by Defendants are not genuine Mary Kay products because they are not subject to, and interfere with, Mary Kay's quality control and customer service requirements that Consultants must follow.

103.     The numerous negative customer reviews of Defendants' Amazon Storefront also show that Defendants are providing exceptionally poor customer service and are selling products bearing the Mary Kay Trademarks that are previously used, tampered with, defective, damaged, improperly packaged, improperly labeled, missing items, or otherwise different from what Defendants had advertised.  Given the high number of customers who have complained about the quality of products bearing the Mary Kay Trademarks that they purchased from Defendants, it is

also very likely that Defendants are responsible for some of the negative reviews of Mary Kay products that appear elsewhere on the Amazon marketplace. *See supra* ¶¶ 33-66. For these reasons, the products being sold by Defendants are also not genuine Mary Kay products because they do not abide by Mary Kay's quality control and customer service requirements that Consultants must follow.

104.    Through their unauthorized use of the Mary Kay Trademarks, Defendants have misled—and continue to mislead—consumers into believing they are purchasing products with the same quality controls as genuine Mary Kay products. In reality, however, the products sold by Defendants are materially different from genuine Mary Kay products because they are not subject to, do not abide by, and interfere with Mary Kay's quality control and customer service requirements.

### Defendants Are Infringing the Mary Kay Trademarks by Selling Products Bearing the Mary Kay Trademarks That Do Not Come with Mary Kay's Satisfaction Guarantee

105.    As set forth above, Mary Kay products that are purchased from Consultants come with the Mary Kay Satisfaction Guarantee. Products that are purchased from any seller who is not a Consultant, however, are not eligible for the Satisfaction Guarantee because Mary Kay cannot ensure the quality of products sold by sellers that are not subject to Mary Kay's quality controls.

106.    Because Defendants are not Consultants, and thus, the products they sell bearing the Mary Kay Trademarks are not subject to Mary Kay's quality control requirements, the products sold by Defendants do not come with the Satisfaction Guarantee.

107.    Because the products Defendants sell do not come with the Satisfaction Guarantee, they are materially different from genuine Mary Kay products.

108.    The Satisfaction Guarantee is a material element of genuine Mary Kay products. Consumers considering whether to purchase Mary Kay products would find it relevant to their purchasing decision to know whether the product they are purchasing is covered by the Satisfaction Guarantee.  Consumers who purchase Mary Kay products with the Satisfaction Guarantee receive the peace of mind that they are receiving a high-quality product, that Mary Kay stands behind the product, and that they can get a refund, product replacement, or product exchange if they are dissatisfied with their product for any reason.

109.    Defendants' unauthorized sale of products bearing the Mary Kay Trademarks is likely to, and does, create customer confusion because customers who purchase products from Defendants believe they are purchasing genuine Mary Kay products that come with the Satisfaction Guarantee when, in fact, they are not.

**Defendants Are Tortiously Interfering with Mary Kay's Contracts with Consultants**

110.    As discussed, Mary Kay allows Mary Kay products to be sold to the public exclusively by Consultants.

111.    Mary Kay has entered into contracts with all of its Consultants that prohibit Consultants from selling Mary Kay products to persons or entities who resell the products. Consultants are permitted to sell products only to end-user consumers, and only in quantities that are generally purchased by consumers for personal use.

112.    Defendants have sold a high volume of products bearing the Mary Kay Trademarks on the Internet since Mary Kay terminated Barrientes's Consultant Agreement and since Mary Kay warned Defendants that their actions interfere with Mary Kay's contracts and business relationships with its Consultants.  As Defendants are not Consultants and are thus not able to purchase products from Mary Kay, the only reasonable explanation for how Defendants

have been able to obtain the volume the products they have resold is by purchasing the products from Consultants.

113.    By purchasing Mary Kay products from Consultants and then reselling them on the Internet, Defendants caused and induced Consultants to breach their contracts with Mary Kay.

114.    Defendants have known that Mary Kay's contracts with Consultants prohibit Consultants from selling Mary Kay products to third parties, such as Defendants, who are not ultimate consumers and who resell the products.

115.    Defendants have known of this prohibition, among other reasons, because Barrientes used to be a Consultant and was aware that Mary Kay's contracts prohibit Consultants from selling Mary Kay products to customers who are not ultimate consumers and who resell the products.   Mary Kay also discussed this prohibition in cease-and-desist letters and a draft complaints it sent to Barrientes prior to filing this action.

116.    Despite having knowledge of this prohibition, Defendants intentionally, knowingly, and willfully interfered with Mary Kay's contracts with its Consultants by inducing Consultants to breach their contracts and sell Mary Kay products to Defendants that Defendants resold on the Internet.

117.    Defendants had no legal right, privilege, or justification for their conduct. Defendants purchased Mary Kay products from Consultants—and in so doing, instigated a breach of the Consultants' contracts with Mary Kay—so that Defendants could resell the products as non-Consultants who are not subject to and do abide by Mary Kay's quality controls, thereby unlawfully infringing upon and materially damaging the value of the Mary Kay Trademarks.

**Barrientes Has Breached His Consultant Agreement with Mary Kay**

118.    Barrientes has also breached his Consultant Agreement with Mary Kay by selling products bearing the Mary Kay Trademarks on Amazon.   When Barrientes entered into a Consultant Agreement on or around December 10, 2018, he agreed that he would not sell Mary Kay products on Internet websites including Amazon.   The Consultant Agreement also stated that this prohibition survives the termination of the agreement.

119.    Mary Kay fulfilled all of its obligations under its Consultant Agreement with Barrientes.

**Mary Kay Has Suffered Substantial Harm as a Result of Defendants' Conduct**

120.    As a proximate result of Defendants' actions, Mary Kay has suffered, and will continue to suffer, significant monetary harm including, but not limited to, loss of sales, damage to the value of its intellectual property, harm to the goodwill associated with the Mary Kay brand, and damage to its existing and potential business relations.

121.    Barrientes' total disregard of his contract with Mary Kay, Defendants' continued unlawful sales of non-genuine, infringing products, and Defendants' attempts to evade Mary Kay's detection by changing the name of their Amazon Storefront all show that Defendants are acting knowingly, intentionally, willfully, and maliciously.

122.    Mary Kay is entitled to injunctive relief because Defendants will otherwise continue to breach their contract with Mary Kay and continue to unlawfully sell products bearing the Mary Kay Trademarks that are materially different from genuine Mary Kay products sold by Consultants and are not subject to, interfere with, and do abide by Mary Kay's quality controls, thereby compromising Mary Kay's quality controls.   Defendants' ongoing illegal conduct has

caused and will continue to cause irreparable harm to Mary Kay's reputation, goodwill, business relationships, intellectual property, and brand integrity.

### FIRST CAUSE OF ACTION
**Trademark Infringement**
**15 U.S.C. §§ 1114 and 1125(a)(1)(a)**

123.     Mary Kay re-alleges and incorporates the allegations set forth in the foregoing paragraphs as if fully set forth herein.

124.     Mary Kay owns the Mary Kay Trademarks.

125.     Mary Kay has registered the Mary Kay Trademarks with the United States Patent and Trademark Office.

126.     The Mary Kay Trademarks are valid and subsisting trademarks in full force and effect.

127.     Defendants have willfully and knowingly used, and continue to use, the Mary Kay Trademarks in commerce for the purpose of selling products on the Internet without Mary Kay's consent.

128.     The products that Defendants sell bearing the Mary Kay Trademarks are not authorized for sale by Mary Kay.

129.     Defendants' use of the Mary Kay Trademarks in connection with their unauthorized sale of products is likely to cause confusion, cause mistake, or deceive consumers because it falsely suggests that the products offered for sale by Defendants are the same as genuine products legitimately bearing the Mary Kay Trademarks and originate from, or are sponsored by, authorized by, or otherwise connected with Mary Kay.

130.     Defendants' use of the Mary Kay Trademarks in connection with their unauthorized sale of products is likely to cause confusion, cause mistake, or deceive because it

suggests that the products Defendants offer for sale are genuine and authentic Mary Kay products.

131.    The products sold by Defendants are not, in fact, genuine and authentic Mary Kay products.   The products sold by Defendants are materially different because, among other reasons, they are ineligible for the Satisfaction Guarantee and are not subject to, do not abide by, and interfere with Mary Kay's quality control procedures that Consultants must follow.

132.    Defendants' unauthorized use of the Mary Kay Trademarks has materially damaged the value of the Mary Kay Trademarks, caused significant damage to Mary Kay's business relations, and infringed on the Mary Kay Trademarks.

133.    As a proximate result of Defendants' actions, Mary Kay has suffered, and will continue to suffer, great damage to its business, goodwill, reputation, and profits in an amount to be proven at trial.

134.    Mary Kay is entitled to recover its damages caused by Defendants' infringement of the Mary Kay Trademarks and disgorge Defendants' profits from their willfully infringing sales and unjust enrichment.

135.    Mary Kay is entitled to injunctive relief under 15 U.S.C. § 1116 because it has no adequate remedy at law for Defendants' infringement, and unless Defendants are permanently enjoined, Mary Kay will suffer irreparable harm.

136.    Mary Kay is entitled to enhanced damages and attorneys' fees under 15 U.S.C. § 1117(a) because Defendants willfully, intentionally, maliciously, and in bad faith infringed on the Mary Kay Trademarks.

## SECOND CAUSE OF ACTION
### False Advertising
### 15 U.S.C. § 1125(a)(1)(b)

137.    Mary Kay re-alleges and incorporates the allegations set forth in the foregoing paragraphs as if fully set forth herein.

138.    Mary Kay is the owner of the Mary Kay Trademarks.

139.    Mary Kay has registered the Mary Kay Trademarks with the United States Patent and Trademark Office.

140.    The Mary Kay Trademarks are valid and subsisting trademarks in full force and effect.

141.    In their listings on Amazon, Defendants have willfully and knowingly used the Mary Kay Trademarks in commerce with the sale and advertising of products without the consent of Mary Kay.

142.    The use of the Mary Kay Trademarks in connection with the unauthorized sale and advertising of products by Defendants is likely to cause consumer confusion, cause mistake, or deceive consumers because Defendants frequently send products to consumers that are entirely different products from the products advertised by Defendants in their product listings that use the Mary Kay Trademarks.  Thus, Defendants have made false statements of fact in their product listings that use the Mary Kay Trademarks.

143.    Defendants' false statements of fact are likely to influence consumers' purchasing decision because consumers expect to receive products as they are described in Amazon product listings when they purchase products on Amazon.

144.    As a proximate result of Defendants' actions, Mary Kay has suffered, and will continue to suffer, great damage, including to its business, good will, reputation, and profits in an amount to be proven at trial.

145.  Mary Kay is entitled to recover its damages caused by Defendants' false advertising and disgorge Defendants' profits stemming from their deceptive conduct and unjust enrichment.

146.  Mary Kay is entitled to injunctive relief under 15 U.S.C. § 1116 because it has no adequate remedy at law for Defendants' actions, and unless Defendants are permanently enjoined, Mary Kay will suffer irreparable harm.

147.  Mary Kay is entitled to enhanced damages and attorneys' fees under 15 U.S.C. § 1117(a) because Defendants willfully, intentionally, maliciously, and in bad faith engaged in false advertising.

### THIRD CAUSE OF ACTION
**Unfair Competition**
**15 U.S.C. § 1125(a)(1)(A)**

148.  Mary Kay re-alleges and incorporates the allegations set forth in the foregoing paragraphs as if fully set forth herein.

149.  Mary Kay owns the Mary Kay Trademarks.

150.  Mary Kay has registered the Mary Kay Trademarks with the United States Patent and Trademark Office.

151.  The Mary Kay Trademarks are valid and subsisting trademarks in full force and effect.

152.  Defendants have willfully and knowingly used, and continue to use, the Mary Kay Trademarks in commerce for the purpose of selling products on the Internet without Mary Kay's consent.

153.  The products that Defendants sell bearing the Mary Kay Trademarks are not authorized for sale by Mary Kay.

154.    Defendants' use of the Mary Kay Trademarks in connection with their unauthorized sale of products is likely to cause confusion, cause mistake, or deceive consumers because it suggests that the products offered for sale by Defendants are the same as genuine products legitimately bearing the Mary Kay Trademarks and originate from, or are sponsored by, authorized by, or otherwise connected with Mary Kay when they are not.

155.    Defendants' use of the Mary Kay Trademarks in connection with their sale of products is likely to cause confusion, cause mistake, or deceive because it suggests that the products Defendants offer for sale are genuine and authentic Mary Kay products when they are not.

156.    Defendants' unauthorized and deceptive use of the Mary Kay Trademarks in their Amazon listings is material and likely to influence consumers to purchase the products, as consumers are likely to believe that products advertised by Defendants using the Mary Kay Trademarks are genuine Mary Kay products that come with the quality controls and other benefits associated with authentic Mary Kay products.

157.    Defendants' unauthorized sale of products bearing the Mary Kay Trademarks and unauthorized use of the Mary Kay Trademarks in advertising infringes on the Mary Kay Trademarks.

158.    Defendants' unauthorized sale of products bearing the Mary Kay Trademarks and unauthorized use of the Mary Kay Trademarks in advertising has materially damaged the value of the Mary Kay Trademarks and has caused significant damages to Mary Kay's business relations.

159.    As a proximate result of Defendants' actions, Mary Kay has suffered, and will continue to suffer, great damage to its business, goodwill, reputation, and profits in an amount to be proven at trial.

160.    Mary Kay is entitled to recover its damages caused by Defendants' unfair competition and disgorge Defendants' profits from their unlawful sales and unjust enrichment.

161.    Mary Kay is entitled to injunctive relief under 15 U.S.C. § 1116 because it has no adequate remedy at law for Defendants' actions and, unless Defendants are permanently enjoined, Mary Kay will suffer irreparable harm.

162.    Mary Kay is entitled to enhanced damages and attorneys' fees under 15 U.S.C. § 1117(a) because Defendants willfully, intentionally, maliciously, and in bad faith infringed on the Mary Kay Trademarks.

### FOURTH CAUSE OF ACTION
### Trademark Dilution
### 15 U.S.C. § 1125(c)

163.    Mary Kay re-alleges and incorporates the allegations set forth in the foregoing paragraphs as if fully set forth herein.

164.    Products bearing the MARY KAY® trademark have been sold to the public since 1963.  For 56 years, Mary Kay has been recognized by consumers as the source of high quality products bearing the MARY KAY® trademark, beginning with cosmetics products and expanding to many other types of products.

165.    The MARY KAY® trademark was first filed with the United States Patent and Trademark Office in 1964, and was registered in 1966.  Since that time, the MARY KAY® trademark has been filed and registered with respect to numerous categories of goods and services.

38

166.    Mary Kay is the owner of the MARY KAY® trademark, and has registered the trademark with the United States Patent and Trademark Office.

167.    The MARY KAY® trademark is valid, subsisting, and in full force and effect.

168.    Mary Kay has expended substantial time, effort, money, and resources advertising and promoting products and services under the MARY KAY® trademark.  As a result of Mary Kay's efforts, the MARY KAY® trademark is the means by which Mary Kay products and services are distinguished from others in the marketplace.

169.    Mary Kay markets, advertises, and sells products bearing the MARY KAY® trademark throughout the United States.

170.    Mary Kay has implemented legitimate and substantial quality controls that it requires all Consultants to follow to protect the Mary Kay name and brand.

171.    Consumers throughout the United States recognize and associate the Mary Kay name with quality.

172.    Because of the quality, durability, and dependability of Mary Kay products and Mary Kay's use of the MARY KAY® trademark, consumers trust the Mary Kay name and Mary Kay products.

173.    The MARY KAY® trademark is inherently distinctive, and as a result of Mary Kay's long and continuous use of the MARY KAY® trademark, it has acquired a secondary meaning associated by purchasers and the public with Mary Kay's products and services.

174.    Mary Kay is widely recognized by the general consuming public as the designated source of goods bearing the MARY KAY® trademark.

175.    For these reasons, since at least 1980, the MARY KAY® trademark has been famous, distinctive, and a widely recognized mark by the consuming public.

176.    After the MARY KAY® trademark became famous, Defendants have willfully used the MARY KAY® trademark in connection with the unauthorized and illegal sale of products.

177.    Because the products sold by Defendants do not come with the Satisfaction Guarantee and are not subject to and do not abide by Mary Kay's quality controls, consumers who purchase products from Defendants are more likely to receive a poor quality, damaged, expired, or defective product and have an unsatisfactory customer experience.  Indeed, numerous customers have complained about receiving poor quality products from Defendants, and have also complained about Defendants' customer service.

178.    Consumers who receive poor quality products that do not come with the Satisfaction Guarantee or customer service provided by Consultants are likely to associate that negative experience with Mary Kay and the MARY KAY® trademark.  As a result, Defendants' unauthorized and willful use of the MARY KAY® trademark is tarnishing and diluting the value and distinctive quality of the MARY KAY® trademark.

179.    Defendants' unlawful actions have harmed the reputation and goodwill associated with the MARY KAY® trademark, and Mary Kay has suffered and will continue to suffer immediate and irreparable injury.  Further, Defendants' actions have harmed and will continue to harm consumers interested in purchasing genuine Mary Kay products.

180.    As a proximate result of Defendants' actions, Mary Kay has suffered, and will continue to suffer, great damage to its business, goodwill, reputation, and profits in an amount to be proven at trial.

181.    Mary Kay is entitled to recover its damages caused by Defendants' dilution of the MARY KAY® Trademark and disgorge Defendants' profits from their unlawful sales and unjust enrichment.

182.    Mary Kay is entitled to injunctive relief under 15 U.S.C. § 1116 because it has no adequate remedy at law for Defendants' actions and, unless Defendants are permanently enjoined, Mary Kay will suffer irreparable harm.

183.    Mary Kay is entitled to enhanced damages and attorneys' fees under 15 U.S.C. § 1117(a) because Defendants willfully, intentionally, maliciously, and in bad faith diluted the value of the Mary Kay Trademarks.

**FIFTH CAUSE OF ACTION**
**Trademark Dilution**
**Tex. Bus. & Com. Code § 16.103**

184.    Mary Kay re-alleges and incorporates the allegations set forth in the foregoing paragraphs as if fully set forth herein.

185.    This claim arises under the laws of the State of Texas.

186.    Mary Kay is the owner of the MARY KAY® trademark, and has registered the trademark with the United States Patent and Trademark Office.

187.    The MARY KAY® trademark is valid, subsisting, and in full force and effect.

188.    Mary Kay has expended substantial time, effort, money, and resources advertising and promoting products and services under the MARY KAY® trademark.  As a result of Mary Kay's efforts, the MARY KAY® trademark is the means by which Mary Kay products and services are distinguished from others in the marketplace.

189.    Mary Kay markets, advertises, and sells products bearing the MARY KAY® trademark throughout the United States, including in Texas.

190.    Mary Kay has implemented legitimate and substantial quality controls that it requires all Consultants to follow to protect the Mary Kay name and brand.

191.    Consumers throughout the United States, including in Texas, recognize and associate the Mary Kay name with quality.

192.    Because of the quality, durability, and dependability of Mary Kay products and Mary Kay's use of the MARY KAY® trademark, consumers trust the Mary Kay name and Mary Kay products.

193.    The MARY KAY® trademark is inherently distinctive, and as a result of Mary Kay's long and continuous use of the MARY KAY® trademark, it has acquired a secondary meaning associated by purchasers and the public with Mary Kay's products and services.

194.    Mary Kay is widely recognized by the general consuming public, including consumers in Texas, as the designated source of goods bearing the MARY KAY® trademark.

195.    For these reasons, since at least 1980, the MARY KAY® trademark has been famous, distinctive, and a widely recognized mark by the consuming public.

196.    After the MARY KAY® trademark became famous, Defendants have willfully used the MARY KAY® trademark in connection with the unauthorized and illegal sale of products.

197.    Because the products sold by Defendants do not come with the Satisfaction Guarantee and are not subject to and do not abide by Mary Kay's quality controls, consumers who purchase products from Defendants are more likely to receive a poor quality, damaged, expired, or defective product and have an unsatisfactory customer experience.  Indeed, numerous customers have complained about receiving poor quality products from Defendants, and have also complained about Defendants' customer service.

198.    Consumers who receive poor quality products that do not come with the Satisfaction Guarantee or customer service provided by Consultants are likely to associate that negative experience with Mary Kay and the MARY KAY® trademark.  As a result, Defendants' unauthorized and willful use of the MARY KAY® trademark is tarnishing and diluting the value and distinctive quality of the MARY KAY® trademark.

199.    Defendants' unlawful actions have harmed the reputation and goodwill associated with the MARY KAY® trademark, and Mary Kay has suffered and will continue to suffer immediate and irreparable injury.  Further, Defendants' actions have harmed and will continue to harm consumers interested in purchasing genuine Mary Kay products.

200.    As a proximate result of Defendants' actions, Mary Kay has suffered, and will continue to suffer, great damage to its business, goodwill, reputation, and profits in an amount to be proven at trial.

201.    Because Defendants have willfully, intentionally, maliciously, and in bad faith infringed on the MARY KAY® trademark, this case qualifies for an award three times the amount of profits and damages and an award of attorneys' fees pursuant to Tex. Bus. & Com. Code §§ 16.103(c) and 16.104(c).

### SIXTH CAUSE OF ACTION
**Texas Common Law Trademark Infringement and Unfair Competition**

202.    Mary Kay re-alleges and incorporates the allegations set forth in the foregoing paragraphs as if fully set forth herein.

203.    This claim arises under the common law of the State of Texas.

204.    Mary Kay owns the Mary Kay Trademarks.

205.    Mary Kay has registered the Mary Kay Trademarks with the United States Patent and Trademark Office.

43

206.    The Mary Kay Trademarks are valid and subsisting trademarks in full force and effect.

207.    Defendants have willfully and knowingly used, and continue to use, the Mary Kay Trademarks in commerce for the purpose of selling products on the Internet without Mary Kay's consent.

208.    The products that Defendants sell bearing the Mary Kay Trademarks are not authorized for sale by Mary Kay.

209.    Defendants' use of the Mary Kay Trademarks in connection with their unauthorized sale of products is likely to cause confusion, cause mistake, or deceive consumers because it falsely suggests that the products offered for sale by Defendants are the same as genuine products legitimately bearing the Mary Kay Trademarks and originate from, or are sponsored by, authorized by, or otherwise connected with Mary Kay.

210.    Defendants' use of the Mary Kay Trademarks in connection with their unauthorized sale of products is likely to cause confusion, cause mistake, or deceive because it suggests that the products Defendants offer for sale are genuine and authentic Mary Kay products.

211.    The products sold by Defendants are not, in fact, genuine and authentic Mary Kay products.   The products sold by Defendants are materially different because, among other reasons, they are ineligible for the Satisfaction Guarantee and are not subject to, do not abide by, and interfere with Mary Kay's quality control procedures that Consultants must follow.

212.    Defendants' unauthorized use of the Mary Kay Trademarks has materially damaged the value of the Mary Kay Trademarks, caused significant damage to Mary Kay's business relations, and infringed on the Mary Kay Trademarks.

213.    As a proximate result of Defendants' actions, Mary Kay has suffered, and will continue to suffer, great damage to its business, goodwill, reputation, and profits in an amount to be proven at trial.

214.    Mary Kay is entitled to recover its damages caused by Defendants' infringement of the Mary Kay Trademarks and disgorge Defendants' profits from their willfully infringing sales and unjust enrichment.

215.    In harming Mary Kay, Defendants have acted with willful misconduct and actual malice.  Accordingly, Mary Kay is entitled to an award of punitive damages.

**SEVENTH CAUSE OF ACTION**
**Tortious Interference with Existing Contracts**

216.    Mary Kay re-alleges and incorporates the allegations set forth in the foregoing paragraphs as if fully set forth herein.

217.    This claim arises under the common law of the State of Texas.

218.    Mary Kay allows Mary Kay products to be sold to the public exclusively by Consultants.

219.    Mary Kay has entered into contracts with all of its Consultants that prohibit Consultants from selling Mary Kay products to persons or entities who resell the products. Consultants are permitted to sell products only to end-user consumers, and only in quantities that are generally purchased by consumers for personal use.

220.    Defendants have sold a high volume of products bearing the Mary Kay Trademarks on the Internet since Mary Kay terminated Barrientes's Consultant Agreement and since Mary Kay warned Defendants that their actions interfere with Mary Kay's relationships with its Consultants.   As Defendants are not Consultants and are thus not able to purchase

products from Mary Kay, the only reasonable explanation for how Defendants have been able to obtain the volume of products they have resold is by purchasing the products from Consultants.

221.    By purchasing Mary Kay products from Consultants and then reselling them on the Internet, Defendants caused and induced Consultants to breach their contracts with Mary Kay.

222.    Defendants have known that Mary Kay's contracts with Consultants prohibit Consultants from selling Mary Kay products to third parties, such as Defendants, who are not ultimate consumers and who resell the products.

223.    Defendants have known of this prohibition, among other reasons, because Barrientes used to be a Consultant and was aware that Mary Kay's contracts prohibit Consultants from selling Mary Kay products to customers who are not ultimate consumers and who resell the products.   Mary Kay also discussed this prohibition in cease-and-desist letters and a draft complaint it sent to Barrientes prior to filing this action.

224.    Despite having knowledge of this prohibition, Defendants intentionally, knowingly, and willfully interfered with Mary Kay's contracts with its Consultants by inducing Consultants to breach their contracts and sell Mary Kay products to Defendants that Defendants resold on the Internet.

225.    Defendants had no legal right, privilege, or justification for their conduct. Defendants purchased Mary Kay products from Consultants—and in so doing, instigated a breach of the Consultants' contracts with Mary Kay—so that Defendants could resell the products as non-Consultants who are not subject to and do abide by Mary Kay's quality controls, thereby unlawfully infringing upon and materially damaging the value of the Mary Kay Trademarks.

226.    Defendants are not parties to the contracts they caused Consultants to breach.

227.    As a proximate result of Defendants' actions, Mary Kay has suffered, and will continue to suffer, great damage to its business, sales, goodwill, reputation, and its existing business relations.

228.    In interfering with Mary Kay's existing contracts with its Consultants, Defendants have acted with willful misconduct and actual malice.  Accordingly, Mary Kay is entitled to an award of punitive damages.

**EIGHTH CAUSE OF ACTION**
**Breach of Contract – Consultant Agreement**
**(Barrientes)**

229.    Mary Kay re-alleges and incorporates the allegations set forth in the foregoing paragraphs as if fully set forth herein.

230.    This claim arises under the common law of the State of Texas.

231.    Barrientes entered into a valid contract with Mary Kay to become a Consultant ("Consultant Agreement").  By entering into the Consultant Agreement, Barrientes agreed to follow all of the Consultant Obligations in exchange for the right to resell Mary Kay products to consumers and receive other benefits provided by the contract.

232.    The Consultant Agreement prohibits Barrientes from selling Mary Kay products on Internet websites including Amazon.  The Consultant Agreement also provides that this prohibition survives the termination of the Consultant Agreement.

233.    Mary Kay fulfilled all of its obligations under the Consultant Agreement.

234.    All conditions required by the Consultant Agreement for Barrientes's performance have occurred.

235.    Barrientes has materially breached the Consultant Agreement by offering for sale and selling products bearing the Mary Kay Trademarks on Amazon.

236.    As a direct and proximate result of Barrientes's material breaches of the Consultant Agreement, Mary Kay has suffered great damage to its business, goodwill, reputation, and profits in an amount to be proven at trial.

237.    Pursuant to Tex. Civ. Prac. & Rem. Code § 38.001(8), Mary Kay is entitled to recover its reasonable attorney's fees from Barrientes because of his breach of his written contract with Mary Kay.

238.    In harming Mary Kay, Barrientes has acted with willful misconduct and actual malice.  Accordingly, Mary Kay is entitled to an award of punitive damages.

## CONDITIONS PRECEDENT

239.    All conditions precedent to Mary Kay's claims for relief, if any, have occurred or have been performed.

## REQUEST FOR ATTORNEYS' FEES

240.    Mary Kay is entitled to recover its attorneys' fees and costs for this action, pursuant to the federal and state law identified herein, and Mary Kay hereby seeks such recovery from Defendants of all its reasonable and necessary attorneys' fees and costs for prosecuting this action and obtaining the relief requested herein.

## JURY DEMAND

241.    Plaintiff demands a trial by jury on all claims and issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Mary Kay prays for relief and judgment as follows:

A.      Judgment in favor of Mary Kay and against Defendants in an amount to be determined at trial including, but not limited to, compensatory damages, statutory damages, treble damages, restitution, disgorgement of profits, punitive damages, exemplary damages, and pre-judgment and post-judgment interest as permitted by law;

B.      That a permanent injunction be issued enjoining Defendants and any employees, agents, servants, officers, representatives, directors, attorneys, successors, affiliates, assigns, any and all other entities owned or controlled by Defendants, and all of those in active concert and participation with Defendants (the "Enjoined Parties") as follows:

      i)      Prohibiting the Enjoined Parties from advertising or selling, via the Internet or otherwise, all Mary Kay products,

      ii)      Prohibiting the Enjoined Parties from using any of the Mary Kay Trademarks in any manner, including advertising on the Internet,

      iii)      Prohibiting the Enjoined Parties from importing, exporting, manufacturing, producing, distributing, circulating, selling, offering to sell, advertising, promoting, or displaying any and all Mary Kay products as well as any products bearing any of the Mary Kay Trademarks,

      iv)      Prohibiting the Enjoined Parties from disposing of, destroying, altering, moving, removing, concealing, or tampering with any records related to any products sold by them which contain the Mary Kay Trademarks including: invoices, correspondence with vendors and distributors, bank records, account books, financial statements, purchase contracts, sales receipts, and any other records that would reflect the source of the products that Defendants have sold bearing these trademarks,

      v)      Requiring the Enjoined Parties to take all action to remove from the Enjoined Parties' websites any reference to any of Mary Kay's products, or any of the Mary Kay Trademarks,

      vi)      Requiring the Enjoined Parties to take all action, including but not limited to, requesting removal from the Internet search engines (such as Google, Yahoo!, and Bing), to remove from the Internet any of the Mary Kay Trademarks which associate Mary Kay's products or the Mary Kay Trademarks with the Enjoined Parties or the Enjoined Parties' websites, and

vii)    Requiring the Enjoined Parties to take all action to remove the Mary Kay Trademarks from the Internet, including from the website www.amazon.com;

C.    An award of attorneys' fees, costs, and expenses; and

D.    Such other and further relief as the Court deems just, equitable and proper.

April 6, 2020                            Respectfully submitted,

*/s/  Christopher J. Schwegmann*
Christopher J. Schwegmann
Texas Bar No. 24051315
cschwegmann@lynnllp.com
**Lynn Pinker Hurst & Schwegmann, LLP**
2100 Ross Avenue, Suite 2700
Dallas, Texas 75201
Telephone: (214) 981-3800
Facsimile: (214) 981-3829

Kent A. Britt
Ohio Bar No. 0068182
kabritt@vorys.com
**Vorys, Sater, Seymour and Pease LLP**
301 E. Fourth Street, Suite 3500
Cincinnati, OH 45202
Telephone: (513) 723-4488
Facsimile: (513) 852-7818

**ATTORNEYS FOR PLAINTIFF**
**MARY KAY INC.**